*350 TEXTO COMPLETO DE LA SENTENCIA
La paite apelante acude ante nos de una sentencia enmendada dictada por el Tribunal de Primera Instancia el 25 de agosto de 2004, notificada el 30 de agosto de 2004.
Alega que el foro apelado erró:

“1. en su apreciación de la prueba cuando establece como un hecho probado, que los terrenos donde ubica la estructura propiedad de la Sucesión de Henry W. Dickson pertenece al Estado Libre Asociado de Puerto Rico y forman parte del Area Marítimo Terrestre.

2. en su apreciación de la prueba cuando establece como un hecho probado que la demandante (aquí apelante) a través de la Sra. Joann Dickson aceptó que los terrenos pertenecen al Estado Libre Asociado de Puerto Rico.

3. en su apreciación de la prueba cuando establece, como un hecho probado, que Durante el Mes de Agosto de 2001, siguiendo los procedimientos establecidos en la Ley de Municipios Autónomos, la legislatura municipal y el Alcalde de Cabo Rojo aprobaron una de las ordenanzas impugnadas.

4. en su apreciación de la prueba cuando establece como un hecho probado que las ordenanzas que se pretenden impugnar fueron aprobadas conforme a los procedimientos parlamentarios establecidos en la ley y que la parte demandante no aportó prueba de que las ordenanzas que se pretenden impugnar fueran aprobadas contrarias a la Ley de Municipios Autónomos.

5. determinar que la parte demandante (aquí apelante) no aportó prueba de que las ordenanzas que se pretenden impugnar fueran aprobadas contrarias a la Ley de Municipios Autónomos.

6. no permitirle a la parte aquí compareciente desfilar prueba sobre el plan de ordenamiento territorial del Municipio de Cabo Rojo.

7. en su apreciación de la prueba cuando establece como un hecho probado solamente que al presente para el lugar donde ubica la estructura de la parte demandante (aquí apelante), no hay proyectada obra pública alguna.

8. apreciación de la prueba cuando establece como un hecho que ya para el 13 de febrero de 1996, la legislatura municipal y el Sr. Alcalde habían aprobado la ordenanza numero 31, serie 1995-1996, para declarar estorbos públicos aquellos solares o predios de terreno yermos que amenazan o afectan la salud y seguridad publica, dicha ordenanza no fue impugnada.

*351
9.en su apreciación de la prueba cuando establece como un hecho probado que posteriormente el 16 de mayo de 2001, se aprobó la Ordenanza Núm. 45 serie 2000-2001 para enmendar la Ordenanza 31, tampoco fue impugnada.

10. en su apreciación de la prueba cuando establece como un hecho probado, que la señora Jo Ann Dickson el día 13 de agosto de 2001, compareció a la legislatura municipal y se le permitió expresarse en relación a la vista sobre la aprobación de la Ordenanza Número 9, serie 2001-2002, la cual fue finalmente aprobada el 17 de agosto de 2001 y que luego de esa vista fue que se aprobó la referida ordenanza”.

11. esbozar las conclusiones de derecho que presenta en su sentencia. ”

La apelante es la Sucesión del señor Henry W. Dickson. Sus miembros radicaron una acción sobre Sentencia Declaratoria y Mandamus, en la que solicitaron que se dejaran sin efecto las Ordenanzas 9 y 16 del Municipio de Cabo Rojo, que le facultan a adquirir y habilitar terrenos para cualquier fin público autorizado por ley. Alegan que mientras estaba pendiente una solicitud de permiso para reconstruir su propiedad, el Municipio aprobó unas ordenanzas declarando la necesidad y utilidad pública del solar donde ubica la estructura de su propiedad. Según los apelantes, dichas ordenanzas constituyen una actuación arbitraria, irrazonable y contraria a la ley, en abierta violación a sus derechos propietarios, por lo que solicita se dejen sin efecto y se emita un Mandamus al alcalde para que resuelva la solicitud de endoso.
Celebrada la vista en su fondo, el Tribunal de Primera Instancia formuló las siguientes determinaciones de hechos. La apelante es propietaria de una estructura localizada en el Poblado de Boquerón del Municipio de Cabo Rojo, en terrenos pertenecientes al Estado Libre Asociado de Puerto Rico y que forman parte del área marítima-terrestre. En el año 2001, la apelante solicitó el endoso del municipio para rehabilitar la estructura que se encontraba deteriorada. En agosto de 2001, el Municipio aprobó la Ordenanza Número 9, Serie 2001-2002, que según el foro apelado fue aprobada siguiendo los procedimientos establecidos por ley. La señora Jo Ann Dickson, quien forma parte de la Sucesión apelante, compareció a la legislatura municipal y se le permitió expresarse en torno a la aprobación de la Ordenanza que fue aprobada el 17 de agosto de 2001, luego de celebrada la correspondiente vista de aprobación.
Además quedó establecido ante el Tribunal de Primera Instancia que los demandantes remodelaron la estructura sin tener los permisos necesarios de ARPE, ni el Municipio de Cabo Rojo, y que no pagaron los arbitrios municipales. Dicha parte representada por la Sra. Jo Ann Dickson aceptó que los terrenos donde está ubicada la estructura de su propiedad pertenecen al Estado. Tampoco aportó prueba de que las ordenanzas impugnadas fueran aprobadas de forma contraria a la Ley de Municipios Autónomos. Según el foro apelado en la prueba ofrecida por la parte demandante hubo ausencia total, en cuanto a que las referidas ordenanzas fueran aprobadas contrario a la Ley de Municipios Autónomos.
De acuerdo con estos hechos, el tribunal concluyó que el estado de derecho a momento de celebrarse la vista en su fondo, era que el solar donde enclava la propiedad de los demandantes le pertenece al Estado. El mero hecho de que la demandante sea propietaria de una estructura en terrenos del ELA, no impide al Municipio demandado ejercer sus derechos y prerrogativas establecidas por ley para adquirir terrenos para uso público y/o declararlos de utilidad pública. Además, el municipio siempre puede utilizar el mecanismo de expropiación forzosa para adquirir terrenos para uso público. En consecuencia, el Tribunal de Primera Instancia declaró NO HA LUGAR la solicitud de impugnación de las Ordenanzas 9 y 16.
Es de esta sentencia que se acude ante nos. Los señalamientos de error de la apelante se reducen a un cuestionamiento de la apreciación de la prueba y determinaciones de hechos del Tribunal de Primera Instancia.
La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por el tribunal *352 apelativo. El juzgador es quien de ordinario está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue quien de ordinario vio y oyó a los testigos. El juez sentenciador ante quien deponen los testigos es quien tiene a oportunidad de verlos y observar su manera de declarar de poder apreciar sus gestos, titubeos, contradicciones, manierismos, dudas, vacilaciones y por consiguiente de ir formando en su conciencia la convicción en cuanto a si dicen o no la verdad. De ahí que en ausencia de error, pasión, prejuicio o parcialidad, los tribunales apelativos no deben intervenir en la apreciación de la prueba y adjudicación de credibilidad del tribunal de instancia. Argüello López v. Argüello García, 2004 J.T.S. 127.
La Ley de Municipios Autónomos faculta a éstos de los poderes necesarios y convenientes para ejercer todas las facultades correspondientes a un gobierno local, entre estos:

“c. Ejercer el poder de expropiación forzosa dentro de sus respectivos límites territoriales por cuenta propia o a través del Gobernador de Puerto Rico...

d. Adquirir propiedad por cualquier medio legal, dentro y fuera de sus límites territoriales...

I. Adquirir y habilitar los terrenos para cualquier clase de obra pública y construir, mejorar, reparar, reconstruir y rehabilitar facilidades de cualquier clase, tipo o naturaleza para cualquier fin público autorizado por ley.

u. Adoptar ordenanzas disponiendo lo relativo a las viviendas que por su estado de ruina, falta de reparación y defectos de construcción son peligrosas o perjudiciales para la salud o seguridad, de acuerdo a las sees. 143 a 151 del Título 17 y sobre cualquier estructura, edificación, rótulo u otro que constituya un estorbo público para su amenaza a la vida y seguridad. 21 L.P.R.A. see. 4052. ”

La Ordenanza Número 9, objeto de impugnación por los apelantes fue aprobada el 19 de agosto de 2001, con el propósito de declarar necesidad y utilidad pública el solar en controversia donde ubica la estructura de los demandantes-apelantes. Surge de su texto, que se ampara en la política pública establecida en la Ley de Municipios Autónomos, que otorga a éstos el máximo posible de autonomía para asumir un rol central y fundamental en su desarrollo urbano, social y económico.
Por Cuanto. La Ley 81 del 30 de agosto de 1991, según enmendada, invistió a los Municipios de las facultades necesarias para vender, gravar y enajenar cualquiera de sus propiedades con sujeción a las disposiciones de ley y ordenanzas aplicables. Además faculta para adquirir y habilitar los terrenos para cualquier clase de obra pública, construir y rehabilitar facilidades de cualquier clase, tipo o naturaleza para cualquier fin público autorizado por ley.
Por Cuanto. Los Municipios podrán adquirir por cualquier medio legal incluyendo expropiación forzosa los bienes y derechos o acciones sobre éstos que sean necesarios, útiles o convenientes para su operación y funcionamiento para el adecuado ejercicio de las funciones de su competencia y jurisdicción de acuerdo a las disposiciones de este subtítulo. Todo Municipio formará y mantendrá actualizado un registro de bienes inmuebles de su propiedad y derechos reales sobre los mismos-Agosto 30, 1991 Num. 81. Artículo 10.002: *353 Enmendado en Octubre 29,1992, Núm 84, Sec. 40, Efectivo Octubre 29, 1992.
Por Cuanto. Los Municipios podrán adquirir por cualquier medio legal, incluyendo expropiación forzosa, los bienes y derechos o acciones sobre éstos que sean necesarios útiles o convenientes para su operación y funcionamiento o para el adecuado ejercicio de las funciones de su competencia y jurisdicción de acuerdo a las disposiciones de este subtítulo. Todo municipio formará y mantendrá actualizado un registro de bienes inmuebles de su propiedad y derechos reales sobre los mismos-Agosto 30, 1991, Núm. 81, Artículo 10.002, Enmendado en Octubre 29,1992, Número 84, Sec. 40, Efectivo Octubre 29,1992.
Por Cuanto. Los comerciantes y la ciudadanía en general del Poblado Boquerón de Cabo Rojo, claman por la ubicación de un área que permita ubicar a los vendedores ambulantes y que tenga un espacio que sirva de estacionamiento a los miles de conciudadanos que visitan y disfrutan de los encantos del poblado.
Por tanto, ordénese por esta Honorable Legislatura Municipal de Cabo Rojo Puerto Rico lo siguiente:

“Sección Ira. Para declarar de necesidad y utilidad pública el solar núm. 55-180-01.1-007-10-001, localizado en el Barrio Boquerón de este Municipio de Cabo Rojo y para otros fines.

Sección 2da. Autorizar al alcalde de Cabo Rojo que cuestione con ARPE, la Junta de Planificación, el Departamento de Recursos Naturales, o con cualquier otra agencia o instrumentalidad gubernamental, el que no se den endosos o permisos para construir o ubicar ninguna estructura comercial o residencial en dicho lote de terreno.

Sección 3ra. Declarar de necesidad pública el solar antes mencionado, así como la intención de adquirir el mismo para el Municipio Autónomo de Cabo Rojo para los fines reseñados. ”

La otra ordenanza impugnada por la apelante es la Ordenanza 45 del 24 de mayo de 2001. Esta fue aprobada para enmendar la primera sección de la Ordenanza Número 31, Serie 1995-96:

“para que en lo sucesivo disponga autorizar al alcalde del Municipio Autónomo de Cabo Rojo a declarar Estorbo Público, cualquier predio o solar yermo, así como aquellas edificaciones o estructuras que fueren perjudicial a la salud, indecente u ofensivo a los sentidos o que interrumpan el libre uso y disfrute de las propiedades de modo que impidan, obstaculicen o minimicen el cómodo goce de la vida o de los bienes, amenacen el ornato o se conviertan en lugar o aposento para la comisión de actos ilegales o indecorosos, disponiéndose que se entenderá por un solar yermo aquel predio de terreno que tenga una cabina superficial de hasta media (1/2 cuerda de terreno que amenace la seguridad personal, que será perjudicial a la salud pública como consecuencia de las inmundicias o desperdicios que allí depositan, que afecten el ordenamiento público, que se preste a la comisión de delitos, fechorías o actos indecorosos u ofensivos a los sentidos, que construyere el libre goce de propiedades públicas y privadas contiguas y cercanas o que ilegalmente construyere el libre tránsito. ”

De nuestro análisis de los autos de este caso, hemos encontrado que la sentencia apelada está basada y fundamentada en el valor probatorio y la credibilidad que mereció al tribunal sentenciador la evidencia documental y los testimonios ante su consideración. Las admisiones de la apelante en que se fundamenta la sentencia, están contenidas en la Transcripción de la Vista en su Fondo que forma pare de este expediente. Surge claramente del testimonio ofrecido én corte por la señora Jo Ann Dickson, que la Sucesión apelante no es *354 la propietaria del terreno en controversia. La señora Dickson admitió en corte que la Sucesión de la cual es parte, había radicado otro pleito para solicitar la titularidad del inmueble en controversia., el cual no les pertenece. Ésta reconoció que, aunque su padre construyó hace más de treinta años una vivienda en esos terrenos, realmente son propiedad del Estado, porque nunca los compró. El tribunal le preguntó, si al momento de radicar la presente causa de acción, la sucesión tenía la titularidad del inmueble. La testigo evadió contestar la pregunta y se limitó a decir que no había visto ningún título de propiedad de otra gente.
Además, la señora Dickson declaró que en una reunión con el Municipio se discutió el hecho de que su casa se encontraba llena de sabandijas y cucarachas y era un hospitalillo de drogas. La testigo reconoció que era un estorbo público, debido al deterioro en que se encontraba. Del mismo modo, admitió que no tenían ningún permiso de ARPE, ni el endoso del municipio para reconstruir la propiedad. A pesar de ello, reconstruyeron la propiedad, sin los correspondientes permisos.
Tal como concluyó el Tribunal de Primera Instancia, no hemos encontrado base alguna, en las alegaciones de que las ordenanzas impugnadas, fueron aprobadas ilegalmente con el propósito de impedir que los apelantes obtuvieran la titularidad del terreno. Surge de autos, que el alcalde de Cabo Rojo fue autorizado desde el año 1996, mediante la Ordenanza Número 31, a intervenir en estructuras y edificaciones que constituyan estorbo público. Se acompañan una serie de comunicaciones escritas presentadas por la propia apelante, que evidencia la intención del Municipio de Cabo Rojo, de la Legislatura de Puerto Rico y de sectores de la comunidad, de rehabilitar y desarrollar- el área turística del Poblado de Boquerón. Así, por ejemplo, hemos encontrado una comunicación del 21 de marzo de 2001, enviada por el Municipio al grupo de ingenieros a cargo de la reconstrucción, donde solicita se ausculte la posibilidad de desarrollar una terraza o miradero donde se localizan los escombros. Durante el mes de marzo de 2001, la oficina de Programas Federales del Municipio, informó al primer mandatario municipal que, para mejorar- el área Comercial de Boquerón, era necesario declarar estorbo público a varias edificaciones. A estos efectos se aprobó la impugnada Ordenanza 45, el 16 de mayo de 2001, para facultar al alcalde a declarar estorbo público cualquier predio o solar yermo, edificación o estructura perjudicial a la salud.
El 17 de mayo de 2001, la parte apelante envió una carta al municipio solicitando su endoso para la reconstrucción de su propiedad en deterioro locabzada en el Poblado de Boquerón. Cónsono con la política pública de rehabilitación del área de Boquerón y en virtud de la autoridad conferida, el Municipio envió una carta a la apelante para que informara los planes que tenían para su propiedad que estaba en ruinas. Así las cosas, el 19 de septiembre de 2001, la Comisión para el Desarrollo Integral de la Región Oeste del Senado de Puerto Rico, celebró vistas en la que la apelante representada por la señora Jo Ann Dickson, tuvo la oportunidad de expresarse. El 5 de noviembre de 2001, dicha comisión rindió su informe en el que concluye que el terreno en referencia, se encuentra dentro de la zona marítima, en la que por ley está prohibida la construcción de estructuras de hormigón. La clasificación de zona marítima-terrestre tiene implicaciones en cualquier propuesta de desarrollo del área. El Senado reconoce que existen estructuras que han sido remodeladas con el endoso del Municipio, en violación de la ley y que se encuentran sólo a pasos de las que se quiere destruir. El informe senatorial concluye que la estructura de los apelantes ha permanecido deshabitada por más de una década. Actualmente se encuentra en deterioro y pronto será un riesgo para las personas y estructuras aledañas. No se ha presentado evidencia alguna fehaciente del valor histórico de la residencia. En consecuencia, se recomienda que bajo ningún concepto se permita la construcción o remodelación de estructuras de hormigón.
Por todas las razones antes expuestas y de conformidad al derecho citado, concluimos que las ordenanzas impugnadas, lejos de ser contrarias a la ley, persiguen hacer cumplir la política pública del Estado de proteger nuestros recursos naturales específicamente, la zona marítima-terrestre, además de formar parte de un proyecto para remodelar y reconstruir el área turística del Poblado de Boquerón para beneficio de toda la ciudadanía. Por lo tanto, se confirma la sentencia apelada.
*355 Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones